THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al. ) | |
| *ex rel.* BROOKS WALLACE, ) | |
| ROBERT FARLEY and ) | |
| MANUEL FUENTES ) | |
| ) | CIVIL ACTION NUMBER |
| Plaintiffs, ) | 7:18-CV-01010-LSC |
| ) | |
| v. ) | |
| ) | |
| EXACTECH, INC. ) | |
| ) | |
| Defendant. ) | |

## UNITED STATES' STATEMENT OF INTEREST REGARDING DEFENDANT'S MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS

Although the United States has not intervened in this action, it remains a real party in interest. *See* 31 U.S.C. § 3730(d); *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 934-35 (2009). And, because the False Claims Act (FCA) is the United States' primary civil tool for prosecuting fraud against the government, the United States has a substantial interest in the development of the law in this area. For this reason, and pursuant to 28 U.S.C. § 517, the United States respectfully submits this Statement of Interest addressing defendant Exactech, Inc.'s Motion to Dismiss and for Judgment on the Pleadings. ECF Nos. 233-34. Specifically, the United States' Statement of Interest

1

addresses defendant's legal argument that the *qui tam* provisions of the FCA violate the Constitution's Appointments Clause and Take Care Clause.

## I.     Statutory Framework.

When Congress enacted the FCA in 1863, it included *qui tam* provisions, following a "long tradition of [such] actions in England and the American Colonies." *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000). The provisions also were consistent with practice in the early United States: "immediately after the framing, the First Congress enacted a considerable number of informer statutes," some of which "provided both a bounty and an express cause of action." *Id.* at 776-77.

The contemporary version of the FCA retains the basic structure of the *qui tam* mechanism. Under the current statute, the Attorney General may bring a civil action to recover treble damages and civil penalties for a violation of the FCA. *See* 31 U.S.C. § 3730(a). Alternatively, a private person known as a "relator" may bring suit "for the person and for the United States Government." *Id.* § 3730(b)(1). The relator's complaint must be filed under seal and served upon the United States. *Id.* § 3730(b)(2). The government then has 60 days, subject to extension, to decide whether to intervene and take over the suit. *Id.* § 3730(b)(2), (3).

If the United States intervenes, "the action shall be conducted by the Government." 31 U.S.C. § 3730(b)(4)(A).  In that circumstance, the government "shall have the primary responsibility for prosecuting the action." *Id.* § 3730(c)(1).  The government may intervene either initially or "at a later date upon a showing of good cause," *id.* § 3730(c)(3), and, upon doing so, may file its own complaint or amend the relator's complaint to add or clarify claims, *id.* § 3731(c).

If the United States declines to intervene, "the person bringing the action shall have the right to conduct the action."  31 U.S.C. § 3730(b)(4)(B).  The relator is neither the government nor its legal representative, however.  He does not appear on behalf of the United States, nor are his legal and factual representations those of the United States.  He is a "private part[y]" seeking to vindicate his independent interest, which arises by virtue of the statute's "partial assignment of the Government's damages claim" to him.  *Stevens*, 529 U.S. at 773, 786 n.17; *see also* 31 U.S.C. § 3730(d) (entitling a relator to a share of the award if his action results in a financial recovery).

Under the current version of the FCA, the government retains considerable control over *qui tam* suits that the Attorney General has declined to take over.  For example, the government is entitled to ongoing information about such cases, can limit discovery to avoid interference with a government investigation or prosecution, and can pursue alternate remedies against the defendant.  31 U.S.C. § 3730(c)(3)-(5).  The government

can veto a relator's proposed dismissal or settlement of an action or, conversely, dismiss or settle the action over the relator's objection. *Id.* § 3730(b)(1), (c)(2)(A), (B); *see, e.g.*, *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 143 S. Ct. 1720 (2023); *Searcy v. Philips Elecs. N. Am. Corp.*, 117 F.3d 154 (5th Cir. 1997); *United States ex rel. Horsley v. Comfort Care Home Health, LLC*, No. 2:19-cv-229-RDP, 2020 WL 4002005 (N.D. Ala. July 15, 2020). The government is not liable for any expenses the relator incurs in bringing suit. 31 U.S.C. § 3730(f).

## II. The Qui Tam Provisions of the FCA Are Constitutional.

Defendant contends that the *qui tam* provisions of the FCA violate the Constitution's Appointments Clause and Take Care Clause. Those arguments, which courts of appeals have unanimously rejected, lack merit.

### A. The Qui Tam Provisions Are Consistent With The Appointments Clause.

The Appointments Clause specifies the permissible means of appointing "Officers of the United States" to public offices "established by Law." U.S. Const. art. II, § 2, cl. 2. Defendant argues (ECF No. 234 at 11-19) that the FCA's *qui tam* provisions are inconsistent with the Appointments Clause. Every court of appeals to address that argument has rejected it. *See United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 804-05 (10th Cir. 2002); *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 757-58 (5th Cir. 2001) (en banc); *United States ex rel. Taxpayers Against Fraud v. Gen. Elec.*

Case 7:18-cv-01010-LSC   Document 248   Filed 09/12/23   Page 5 of 18

*Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994); *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 757-59 (9th Cir. 1993); *see also Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1312 (11th Cir. 2021) (relying on the rationale of this authority in a case where Article II arguments were not presented). Those decisions are correct.

In *Stevens*, the Supreme Court held that *qui tam* relators have Article III standing to pursue actions under the FCA. *See* 529 U.S. at 771-78. The Court did not decide whether the Act's *qui tam* provisions comport with the Appointments Clause. *See id.* at 778 n.8. In two respects, however, the Court's analysis in *Stevens* suggests that defendant's Appointments Clause challenge lacks merit.

First, in holding that the FCA's *qui tam* provisions are consistent with Article III, the Supreme Court in *Stevens* expressly declined to rely on a theory that a private relator sues as an "agent of the United States." 529 U.S. at 772. The Court instead observed that the relator's statutory entitlement to a share of any ultimate recovery gives him a concrete personal stake in the disposition of the suit, *id.*, and the Court concluded that "[t]he FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim," *id.* at 773. After addressing standing, the *Stevens* Court held that the FCA does not authorize relators to pursue *qui tam* actions against States because, among other things, actions pursued by relators are "private suit[s]" brought by "private parties." *Id.* at 780-81 n.9, 786 n.17. The core premise of defendant's Appointments Clause

5

challenge—that the FCA's *qui tam* provisions make relators federal officers, see ECF No. 234 at 11-17—is inconsistent with the *Stevens* Court's emphasis on the relator's personal, private stake in the litigation and rejection of the notion that relators are "agents" of the government.  Second, the Supreme Court in *Stevens* observed that, "immediately after the framing, the First Congress enacted a considerable number of informer statutes," some of which (like the FCA) "provided both a bounty and an express cause of action."  529 U.S. at 776-77.

That historical evidence bears directly on the Appointments Clause question presented here.  Although defendant attempts to dismiss the "early statutes" at issue because they were "enacted between 1789 and 1794," ECF No. 234 at 18, that timing makes them especially relevant: legislation "passed by the first Congress assembled under the Constitution, many of whose members had taken part in framing that instrument, is contemporaneous and weighty evidence of its true meaning," *Marsh v. Chambers*, 463 U.S. 783, 790 (1983) (quoting *Wisconsin v. Pelican Ins. Co.*, 127 U.S. 265, 297 (1888)) (ellipsis omitted); *see Bowsher v. Synar*, 478 U.S. 714, 723-24 (1986) (giving weight to the conclusion of the First Congress that the Legislative Branch should have no role in the removal of Executive officers); *Mistretta v. United States*, 488 U.S. 361, 401 (1989) (explaining that "'traditional ways of conducting government give meaning' to the Constitution") (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343

U.S. 579, 610 (1952) (Frankfurter, J., concurring)) (ellipsis omitted); *Riley*, 252 F.3d at 752 (finding it "logically inescapable that the same history that was conclusive on the Article III question in *Stevens* with respect to *qui tam* lawsuits initiated under the FCA is similarly conclusive with respect to the Article II question concerning this statute"); *see also NLRB v. Noel Canning*, 573 U.S. 513, 524-25 (2014).

In addition to the guidance that *Stevens* provides, *qui tam* relators do not possess the practical indicia to qualify as federal officers subject to the Appointments Clause. The concept of an "office" "embraces the ideas of tenure, duration, emolument, and duties." *United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 393 (1868); *see Auffmordt v. Hedden*, 137 U.S. 310, 327 (1890) (merchant appraiser did not hold an office where his position was "without tenure, duration, continuing emolument, or continuous duties, and he act[ed] only occasionally and temporarily"); *United States v. Germaine*, 99 U.S. 508, 511-12 (1879) (surgeon did not hold an office where he was "only to act when called on by the Commissioner of Pensions in some special case"). An office is also not personal; rather, its "duties continue, though the person be changed." *United States v. Maurice*, 26 F. Cas. 1211, 1214 (C.C.D. Va. 1823) (No. 15-747) (Marshall, C.J.).

Here, the role of relators is limited in time and scope, confined to a particular case, and fundamentally personal in nature, stemming from their capacity as a plaintiff pursuing what is in essence a partially assigned claim. *See Lucia v. SEC*, 138 S. Ct.

2044, 2051 (2018) ("[A]n individual must occupy a 'continuing' position established by law to qualify as an officer.") (citing *Germaine*, 99 U.S. at 511).  In addition, "[r]elators are not entitled to the benefits of officeholders, such as drawing a government salary." *Stone*, 282 F.3d at 805; *see Riley*, 252 F.3d at 757-58 (noting that relators "are not subject to either the benefits or the requirements associated with offices of the United States").  And neither a relator nor their attorney in conducting *qui tam* litigation has any duty to subordinate the relator's interest to that of the government if a conflict between those interests arises.  Rather, the task of representing the United States in FCA litigation is entrusted to attorneys within the Department of Justice, who can and do contest legal and factual representations made by relators in *qui tam* actions.

Moreover, although a statutory designation is not dispositive of the constitutional question, *cf. Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 392-93 (1995); *Mistretta*, 488 U.S. at 393, it is notable that the FCA does not purport to "establish[] by Law" an "Office[]" of informer or relator, U.S. Const. art. II, § 2, cl. 2.  Nor does the Act otherwise express an intent that relators should be treated as federal officers.  To the contrary, the FCA provision that authorizes *qui tam* suits is entitled "ACTIONS BY PRIVATE PERSONS."  31 U.S.C. § 3730(b).

Defendant attempts to draw an analogy to the Federal Election Commission members whom the Supreme Court held to be "Officers of the United States" in *Buckley*

*v. Valeo*, 424 U.S. 1 (1976).  *See* ECF No. 234 at 12-15.  But defendant's argument disregards critical differences between members of the Federal Election Commission and a *qui tam* relator.  Most fundamentally, the positions in *Buckley* were not personal, were not limited to a single case, and were endowed with "primary responsibility for conducting civil litigation in the courts of the United States for vindicating public rights." *Buckley*, 424 U.S. at 140.  A *qui tam* relator, by contrast, bears none of those indicia of being a federal officer.  He is instead merely a "private part[y]" pursuing civil litigation in his own personal interest.  *Stevens*, 529 U.S. at 786 n.17; *see Taxpayers Against Fraud*, 41 F.3d at 1041 ("Although a relator may sue in the government's name, the relator is not vested with governmental power.").

Unlike in *Buckley*, a relator is not empowered to "administ[er] and enforce[] . . . public law" in the constitutional sense.  *Buckley*, 424 U.S. at 141.  To the contrary, the government's own conduct in *qui tam* litigation is entrusted solely to officials within the Executive Branch.  A *qui tam* relator is more aptly analogized, not to an agency official who "litigates on behalf of the Government," ECF No. 234 at 13, but to a plaintiff who asserts a private right of action under a federal statute, such as Title VII or the Sherman Act.  Congress's decision to authorize private lawsuits may often rest in part on its belief that such actions will vindicate a societal interest in deterring and remedying violations of federal law.  As with plaintiffs who sue under other federal statutes, the potential for *qui*

9

*tam* relators to furnish practical assistance in the enforcement of federal law does not transform them into "Officers of the United States" whose selection is governed by the Appointments Clause.

The Supreme Court in *Buckley* also emphasized the Federal Election Commission's "extensive rulemaking and adjudicative powers." 424 U.S. at 110. In particular, the Commission could bring civil enforcement actions without any "concurrence of or participation by the Attorney General," and "the decision not to seek judicial relief . . . appear[ed] to rest solely with the Commission." *Id.* at 111. Under the FCA's *qui tam* provisions, by contrast, a relator's filing suit (or not filing suit) does not limit the ability of the Department of Justice to pursue a claim on behalf of the United States. To the contrary, as the Eleventh Circuit has recognized, the United States has "considerable authority over intervened and non-intervened qui tam actions." *Yates*, 21 F.4th at 1312. The FCA specifies that every *qui tam* complaint must be filed under seal and served on the government precisely to ensure that the United States can investigate the matter and determine whether it wishes to "intervene and proceed with the action." 31 U.S.C. § 3730(b)(2). If the government chooses to intervene, "the action shall be conducted by the Government," *id.* § 3730(b)(4)(A), which "shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the" relator, *id.* § 3730(c)(1); *see Polansky*, 143 S. Ct. at 1728 (noting that, if the government

intervenes, "the relator loses control" and the action is "'conducted by the Government'"). The United States can also "elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty," rather than litigating the FCA suit. *Id.* § 3730(c)(5).

Even if the government declines to intervene or to elect an alternate remedy, it retains a great deal of control over a *qui tam* suit. The United States is entitled, for example, to receive copies of all pleadings and transcripts, 31 U.S.C. § 3730(c)(3), and to stay any discovery by the relator that "would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts," *id.* § 3730(c)(4). Even if the government initially declines to intervene, it may intervene at a later time and move to dismiss the relator's claims. *See Polansky*, 143 S. Ct. at 1732, 1734. Such motions are subject to highly deferential review under Federal Rule of Civil Procedure 41(a); indeed, the Supreme Court emphasized that district courts must grant dismissal "in all but the most exceptional cases"—"even if the relator presents a credible assessment to the contrary," *Polansky*, 143 S. Ct. at 1734. The government can also settle a pending *qui tam* suit, *see* 31 U.S.C. § 3730(c)(2)(B), and it can veto a relator's proposed settlement or voluntary dismissal of his action, *see id.* § 3730(b)(1).

*Qui tam* relators therefore do not exercise the United States' prosecutorial authority. And, as noted above, private parties' pursuit of *qui tam* litigation is also

consistent with longstanding historical practice, which is strong evidence that the Framers did not view *qui tam* relators as "Officers" who must be appointed pursuant to the Appointments Clause.

### B. The *Qui Tam* Provisions of the FCA Are Consistent With The Take Care Clause.

For similar reasons, the *qui tam* provisions of the FCA are also consistent with the constitutional separation of powers, including the Take Care Clause, which states that the President "shall take Care that the laws be faithfully executed." U.S. Const. art. II, § 3. In assessing whether legislation "disrupts the proper balance between the coordinate branches, the proper inquiry focuses on the extent to which it prevents the Executive Branch from accomplishing its constitutionally assigned functions." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 443 (1977). Regardless of whether the United States intervenes in a given suit, relators' conduct of *qui tam* litigation does not prevent the President from carrying out his constitutional functions—a point on which courts have long agreed. *See Stone*, 282 F.3d at 805-07; *Riley*, 252 F.3d at 752-57; *Taxpayers Against Fraud*, 41 F.3d at 1041; *Kelly*, 9 F.3d at 749-57; *see also United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1154-55 (2d Cir. 1993).

As explained in Part (II)(A), *qui tam* relators are private litigants, as the Supreme Court made clear in *Stevens*. *See* 529 U.S. at 772 (expressly declining to adopt a theory

that a private relator sues as an "agent of the United States"). The Court instead held that, although it is the United States whose injury underlies an FCA suit, the relator has Article III standing because of his independent stake: he has a "concrete *private* interest in the outcome of the suit" that arises from Congress's "partial assignment of the Government's damages claim" to him. *Id.* at 772-73 (emphasis added); *see also United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1167 (10th Cir. 2009) (holding that a would-be relator had validly released potential future *qui tam* claims she could personally bring because "the relator has an interest in some part of the civil action apart from the Government").

As with the Appointments Clause, the fact that a relator's suit may also vindicate a federal interest in remedying and deterring fraud on the United States does not change the analysis. As the *en banc* Fifth Circuit explained when it rejected a separation-of-powers challenge to the *qui tam* provisions, the Take Care Clause "does not require Congress to prescribe litigation by the Executive as the *exclusive* means of enforcing federal law." *Riley*, 252 F.3d at 753. Instead, as the Sixth Circuit noted, "[o]ur current statutory framework includes many laws that authorize individuals to act as 'private attorneys-general,' bringing causes of action for the common weal," *Taxpayers Against Fraud*, 41 F.3d at 1041, such as Title VII and the Sherman Act.

And, again, courts have also correctly recognized that historical evidence helps establish that the *qui tam* provisions are consistent with the constitutional separation of powers. *See, e.g.*, *Riley*, 252 F.3d at 752-53. "Statutes providing for actions by a common informer, who himself had no interest whatever in the controversy other than that given by statute, have been in existence for hundreds of years in England, and in this country ever since the foundation of our government." *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541 n.4 (1943); *see also Stevens*, 529 U.S. at 774-77. Courts rejecting separation-of-powers challenges to the *qui tam* provisions have also recognized that the United States retains significant control over *qui tam* suits, regardless of whether it intervenes. *See Riley*, 252 F.3d at 753-57; *Taxpayers Against Fraud*, 41 F.3d at 1041; *Kelly*, 9 F.3d at 753-55; *Kreindler & Kreindler*, 985 F.2d at 1155; *cf. Yates*, 21 F.4th at 1312. All of those control mechanisms have been fully available here—the United States has received pleadings in this case, has monitored the litigation, is filing this statement of interest, is engaged in certain settlement discussions, and could, upon a showing of good cause, move to intervene, settle, or dismiss this case if it chose to do so. For all of these reasons, defendant is mistaken in its contention that relators serve as "unaccountable . . . de facto prosecutors." ECF No. 234 at 22.

Defendant's reliance on *Morrison v. Olson*, 487 U.S. 654 (1988), is likewise erroneous. *Morrison* upheld the constitutionality of restrictions on the President's ability

to remove an independent counsel who possessed "full power and independent authority to exercise all investigative and prosecutorial functions and powers of the Department of Justice." *Id.* at 662.  A *qui tam* relator, by contrast, bears none of those indicia of being a federal officer.  He exercises *no* "investigative and prosecutorial functions and powers of the Department of Justice," *id.*, and is instead merely a "private part[y]" pursuing civil litigation in his own personal interest, *Stevens*, 529 U.S. at 786 n.17.  The government's own conduct in the litigation is entrusted solely to officials within the Executive Branch, and the government has far greater authority over the relator's conduct of *qui tam* litigation than it had over the independent counsel in *Morrison* in any event.

Defendant's more specific arguments are likewise mistaken.  Defendant complains that the Executive Branch cannot "remov[e]" a *qui tam* relator and that relators can initiate a *qui tam* suit without prior government approval, ECF No. 234 at 23-25, but the government may intervene and displace the relator's authority to litigate a case, including, if it wishes, by dismissing the relator's lawsuit altogether.  *See Polansky*, 143 S. Ct. 1720.  Nor does Article II require that Executive Branch officials be able to prevent private litigants from suing to vindicate their "private interest[s]," *Stevens*, 529 U.S. at 772, even if those private interests may overlap with public ones.  Defendant does not contend that the Constitution would require that the Executive Branch approve private suits under Title VII or under the Sherman Act, for example, before they are filed.

15

Once a *qui tam* suit is filed under the FCA, the statute includes many provisions by which the Executive Branch can prevent uses of the *qui tam* mechanism that might be inconsistent with United States interests. And contrary to defendant's suggestion, the government has ample recourse where it concludes that "an FCA lawsuit should proceed but disagrees with the specific claims identified by the relator." ECF No. 234 at 26. The government can, for example, intervene in the suit and then "file its own complaint or amend the complaint of" the relator. 31 U.S.C. § 3731(c). Furthermore, if the government is concerned that relators' conduct of a *qui tam* suit might "create precedent that undermines the United States' litigating interests," ECF No. 234 at 26, it likewise has ample remedies—it can, for example, settle the case (as defendant notes, *see id.* at 26-27), dismiss the case, intervene and take over the conduct of the litigation, or participate through the filing of statements of interest or amicus briefs. For all of these reasons, the Executive's constitutional authority is not impaired when "private part[y]" relators file suit to vindicate their personal interests, consistent with "the long tradition of *qui tam* actions in England the American Colonies." *Stevens*, 529 U.S. at 774, 786 & n.17.

### C. The Relators Have Standing Under Article III, As The Supreme Court Has Held.

Defendant further asserts that, "[b]ecause Relators lack authority to prosecute this action under Article II," they lack Article III standing. ECF No. 234 at 27. Since

defendant's Article II arguments fail for the reasons discussed *supra*, defendant's Article III argument necessarily fails.  Moreover, that argument is contrary to binding Supreme Court precedent.  After reviewing the statutory framework of the FCA and the historical use of *qui tam* actions in England and America, the Supreme Court in *Stevens* concluded that there is "no room for doubt that a *qui tam* relator under the FCA has Article III standing."  *Stevens*, 529 U.S. at 778.  In so holding, *Stevens* acknowledged that the same Article II issues now raised by defendant were not before it, *see id.* at n.8, so those arguments cannot provide a basis or authority to overrule *Stevens'* express ruling that relators under the FCA have Article III standing.

Accordingly, this Court should reject defendant's Article II arguments that its sister courts have repeatedly and properly rebuffed, conclude that relators have Article III standing, *see Stevens*, 529 U.S. at 778, and deny defendant's motion to dismiss.

Respectfully submitted this the 12th day of September 2023.

> BRIAN M. BOYNTON
> Principal Deputy Assistant Attorney General
>
> s/Michael A. Hoffman
> JAMIE ANN YAVELBERG
> EDWARD C. CROOKE
> MICHAEL A. HOFFMAN
> Attorneys, Civil Division
> U.S. Department of Justice
> P.O. Box 261, Ben Franklin Station
> Washington, DC 20044

Telephone: (202) 353-1271

PRIM F. ESCALONA
UNITED STATES ATTORNEY

DON B. LONG
Assistant United States Attorney
1801 4th Avenue North
Birmingham, AL 35203
Telephone: (205) 244-2001

Counsel for the United States