

FILED
2023 Nov-20 PM 04:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA, et al. *ex rel.* BROOKS WALLACE, ROBERT FARLEY, and MANUEL FUENTES,** | ) | |
| **Plaintiffs,** | ) | **7:18-cv-01010-LSC** |
| **v.** | ) | |
| **EXACTECH, INC.,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION AND ORDER

Before the Court is Defendant Exactech, Inc.'s ("Defendant") Motion to Dismiss and for Judgment on the Pleadings. (Doc. 233.) Relators Brooks Wallace, Robert Farley, and Manuel Fuentes ("Relators") bring this *qui tam* suit under the False Claims Act ("FCA") on behalf of the United States alleging that Defendant submitted false claims to the Medicare and Medicaid programs. (*See* doc. 1.) After multiple years of proceedings, Defendant filed this motion on August 15, 2023, challenging the constitutionality of the FCA. (Doc. 233.) For the reasons stated below, Defendant's constitutional challenges lack merit, and its motion is **DENIED**.

### I. Background

Enacted to target corruption during the Civil War era, the FCA allows private parties—known as relators—to bring civil lawsuits on behalf of the government against entities who violate the law. *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 424 (2023). The law is enforced "through a unique public-private scheme." *Id.* Specifically, the relator may sue "in the name of the Government." 31 U.S.C. § 3730(b)(1). A relator can sue anyone who, among other things, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." *Id.* § 3729(a)(1)(A).

Once a lawsuit is filed, the relator faces restrictions that are not placed on ordinary civil plaintiffs. *Polansky*, 599 U.S. at 425. First, the relator must file the complaint under seal and serve the complaint "on the Government." 31 U.S.C. § 3730(b)(2). The Government then has sixty (60) days to review the filing and take one of two actions: either intervene and take control of the case or decline to intervene and let the relator continue. *Id.* § 3730(b)(4). If the Government intervenes, it assumes full control of the action. *Id.* § 3730(c)(1).

If the Government declines to intervene, as in this case, the relator may proceed on his own. *Id.* § 3730(b)(4)(B). However, the relator proceeds subject to oversight from the Government because it remains as a "real party in interest." *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 934–35 (2009).

Moreover, the Government may still intervene later "upon a showing of good cause." 31 U.S.C. § 3730(c)(3). It can also request service of all pleadings and deposition transcripts or seek a stay of the discovery process if the process interferes with an investigation. *Id.* § 3730(c)(3), (4). Significantly, the Government retains the power to seek dismissal of the relator's suit or settle the action without the relator's consent if the court finds the settlement reasonable. *Id.* § 3730(c)(2)(A), (B).

Although the facts and procedural history of this case are not crucial to the resolution of this motion, a brief summary illustrates the control that the Government retains in FCA actions. Relators filed this *qui tam* action alleging multiple FCA violations. (Doc. 1.) They allege that Defendant submitted false claims to the Medicare and Medicaid programs, along with other government programs. (*Id.*) The Government reviewed the complaint under seal and declined to intervene. (Doc. 18.) Relators continued the action, and the Government requested copies of all pleadings. (*Id.*) The proceedings led to numerous dispositive motions and settlement negotiations. (*See* docs. 37, 57, 143, 224.) Nevertheless, the litigation continues.

## II. Standard of Review

Defendant moved for judgment on the pleadings and, in the alternative, to dismiss the suit for lack of subject matter jurisdiction. (Doc. 233 at 1.) It contends

that the FCA violates Article II of the Constitution, and as such, Relators cannot bring a suit on behalf of the United States Government. (*Id.* at 2.) Defendant concludes that Relators thus lack standing. (*Id.*)

**a. Motion for Judgment on the Pleadings**

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001).

**b. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

"[W]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, and . . . [must] satisfy itself as to the existence of its power to hear the case." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). The Court may consider matters outside the pleadings in ruling on a motion under Rule 12(b)(1). *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). The burden of proof on a Rule 12(b)(1) motion is on the party averring jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942).

**III. Discussion**

This Court's analysis of the merits of Defendant's motion is the same whether addressed under Rule 12(b)(1) or Rule 12(c). If the FCA violates Article II, Relators lack standing and the motion must be granted. If not, the motion must be denied. Supreme Court precedent mandates the latter.

**a. The Motion for Judgment on the Pleadings is not procedurally defective.**

Before addressing the merits, Relators assert that Defendant's motion is untimely. (Doc. 249 at 16.) A motion under Rule 12(c) may be untimely if filed shortly before trial. *Compare McBride v. Coats*, No. 8:06-cv-1490-T-24EAJ, 2007 WL 4463595, at *1 (M.D. Fla. Dec. 17, 2007) (denying a motion for judgment on the pleadings as untimely when the defendant filed the motion one month before trial and one week before the final pretrial conference) *with King v. Akima Glob. Servs.*, 775 F. App'x 617, 620 n.1 (11th Cir. 2019) (concluding a Rule 12(c) motion was not untimely when made four months before trial); *see also McAnally v. Ala. Plumbing Contractor LLC*, No. 2:19-CV-2033-RDP, 2022 WL 363590, at *3 (N.D. Ala. Feb. 7, 2022) (noting that a motion under Rule 12(c) was likely untimely because the movant filed the motion ten months after the dispositive motion deadline and fourteen days before trial). Here, the Court has not reset the trial date and does not find the motion untimely.

Relators also claim that Defendant waived its arguments by failing to plead them as an affirmative defense. (Doc. 249 at 12.) "[T]he general rule is that, when a party fails to raise an affirmative defense in the pleadings, that party waives its right to raise the issue at trial." *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988) (discussing waiver of an affirmative defense under Fed. R. Civ. P. 8(c)). An affirmative defense is "[a]ny matter that does not tend to controvert the opposing party's prima facie case as determined by the applicable substantive law." *Id.* (quoting 2A J. Moore, Moore's Federal Practice ¶ 8.27[3] (2d ed. 1985)).

At the same time, "[t]he Supreme Court has held that the purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it." *Grant v. Preferred Rsch., Inc.*, 885 F.2d 795, 797 (11th Cir. 1989). Therefore, a party may assert an affirmative defense later if it does not prejudice the nonmovant. *See Easterwood v. CSX Transp., Inc.*, 933 F.2d 1548, 1551 (11th Cir. 1991) (noting the Eleventh Circuit has "been reluctant to enforce strictly the harsh waiver requirement where the plaintiff [cannot] demonstrate any prejudice due to the lack of notice"); *compare Grant*, 885 F.2d at 797 (holding that the defendant did not waive an affirmative defense despite first raising it in a motion for summary judgment one month before trial) *with Day v. Liberty Nat. Life Ins.*, 122 F.3d 1012, 1016 (11th Cir.

1997) (holding that a defendant waived an affirmative defense that was first raised after the jury's verdict).

Although Relators lacked prior notice of this affirmative defense, they are not thereby prejudiced. The defense does not delay trial or distract the Parties from trial preparation. Moreover, the question before this Court is purely legal and does not require either side to present additional facts or arguments to a jury. Thus, Defendant did not waive the defense because Relators are not prejudiced. *See Hassan*, 842 F.2d at 263.

**b. Relators' standing may properly be challenged on a motion to dismiss for lack of subject matter jurisdiction.**

Relators also argue that Defendant is not challenging subject matter jurisdiction. (Doc. 249 at 14–16.) To invoke a federal court's subject matter jurisdiction, a plaintiff must have standing. *DiMaio v. Democratic Nat. Comm.*, 520 F.3d 1299, 1302 (11th Cir. 2008) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). A plaintiff's standing "is an element of the constitutional requirement of 'case or controversy,' [and] lack of standing deprives the court of subject matter jurisdiction." *In re Weaver*, 632 F.2d 461, 463 n.6 (11th Cir. 1980) (citing *Fairley v. Patterson*, 493 F.2d 598 (5th Cir. 1974)). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject

matter jurisdiction under [Fed. R. Civ. P.] 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991).

A defendant may move to dismiss an action for lack of subject matter jurisdiction by making either a facial or factual attack. *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232. (11th Cir. 2008) "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1232–33 (quoting *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). On the other hand, a factual attack requires the support of extrinsic evidence. *Id.* at 1232.

Here, Defendant does not point to any material outside the pleadings. (*See* doc. 234.) The challenge is thus a facial challenge. Defendant alleges Relators cannot litigate on behalf of the United States because doing so would violate Article II of the Constitution. (Doc. 233 at 28–29.) If Relators cannot litigate on behalf of the Government, they lack standing under Article III. (*Id.*) The Supreme Court has determined that relators have standing under Article III. *See Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000). Still, Defendant asserts that the Supreme Court did not resolve whether the FCA violates the Appointments

Clause and the Take Care Clause of Article II. If Defendant's challenges are meritorious, Relators lack standing. (*See* doc. 234 at 17–19.) Therefore, Defendant's constitutional arguments are challenges to this Court's subject matter jurisdiction. *DiMaio*, 520 F.3d at 1302.

**c. Defendant's constitutional arguments lack merit.**

Defendant claims this Court lacks subject matter jurisdiction because the FCA's *qui tam* provisions are unconstitutional. (Doc. 234 at 11.) Specifically, Defendant alleges that the FCA violates two provisions within Article II: the Appointments Clause and the Take Care Clause. (*Id.* at 18.) Much of Defendant's argument stems from dissenting opinions from the Supreme Court and other circuits. (*See id.* at 9–10.)

Every circuit to consider the issue has concluded that the FCA does not violate Article II. *See United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 751–58 (9th Cir. 1993); *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1040–42 (6th Cir. 1994); *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753–58 (5th Cir. 2001) (en banc); *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 804–07 (10th Cir. 2002). District courts within the Eleventh Circuit have concluded the same. *See United States ex rel. Butler v. Magellan Health Servs.*, Inc., 74 F. Supp. 2d 1201, 1212 (M.D. Fla. 1999); *United States v. Halifax Hosp. Med. Ctr.*,

997 F. Supp. 2d 1272, 1278 (M.D. Fla. 2014). While not bound by these decisions, this Court finds them persuasive.

**i. The FCA does not violate the Appointments Clause.**

Defendant first contends that the FCA violates the Appointments Clause. (Doc. 234 at 19.) The Appointments Clause gives the President the power to nominate, with Senate approval, "all other officers of the United States, whose appointments are not herein otherwise provided for and which shall be established by law." U.S. Const. art. II, § 2, cl. 2. Additionally, Congress may "vest the appointment of such inferior officers as they may think proper." *Id.*

*Qui tam* relators are not officers under the Appointments Clause. Supreme Court precedent requires an "officer" to have "tenure, duration, continuing emolument, or continuous duties." *Auffmordt v. Hedden*, 137 U.S. 310, 327 (1890). An officer must have duties that are "permanent, not occasional or temporary." *United States v. Germaine*, 99 U.S. 508, 511–12 (1878). Thus, if his duties are temporary and not continuous, an individual is not an "officer" within the meaning of the Appointments Clause. *See id.*; *Auffmordt*, 137 U.S. at 327.

Relators' authorization to litigate under the FCA is not permanent, and they act only temporarily. *See Riley*, 252 F.3d at 757; *Taxpayers Against Fraud*, 41 F.3d at 1041. Their positions are temporary and exist only for the duration of a particular

lawsuit; by no means can that constitute a permanent position. Nor do relators wield governmental power. *Taxpayers Against Fraud*, 41 F.3d at 1041. Instead, the Government restricts their power as civil litigants: the Government can intervene, monitor and limit discovery, and settle the action without relators' consent. *See* 31 U.S.C. § 3730. Moreover, relators enjoy no governmental benefits. *Riley*, 252 F.3d at 758. Thus, relators are not officers under the Appointments Clause. *See Auffmordt*, 137 U.S. at 327; *Germaine*, 99 U.S. at 511–12.

Contrary to Defendant's assertion, *Buckley v. Valeo*, 424 U.S. 1 (1976) does not govern this case. Defendant asserts *Buckley* establishes a more expansive definition of an "officer." (*See* doc. 256 at 10.) Defendant reads *Buckley* too broadly. *See Stone*, 282 F.3d at 805. *Buckley* held that "any *appointee* exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States,' and must, therefore, be appointed in the manner prescribed by [Article II]." 424 U.S. at 126 (emphasis added). To read "any appointee" as "any person" would conflict with *Auffmordt* and *Germaine*. *See* Neil Kinkopf, *Of Devolution, Privatization, and Globalization: Separation of Powers Limits on Congressional Authority to Assign Federal Power to Non-Federal Actors*, 50 Rutgers L. Rev. 331, 371 (1998). Additionally, in *Buckley* the Supreme Court expressly relied on both *Auffmordt* and *Germaine* and was clear that its holdings should be read in conformity with those prior decisions.

*See Buckley*, 424 U.S. at 126 n.162; *Stone*, 282 F.3d at 805. As such, it did not overrule those decisions. *See id.*

Because relators are not officers, the FCA does not violate the Appointments Clause of Article II. *See id.*; *Taxpayers Against Fraud*, 41 F.3d at 1041.

**ii. The FCA does not violate the Take Care Clause.**

Defendant next claims that the FCA violates the Take Care Clause. (Doc. 234 at 29.) The Take Care Clause directs the President to "take Care that the Laws be faithfully executed." U.S. Const., art. II, § 3. However, the text does not give the President the exclusive power to enforce federal law. *Riley*, 252 F.3d at 753; *see also Kelly*, 9 F.3d at 751 (rejecting the argument that only the Executive Branch has the power to enforce laws).

Defendant relies on *Morrison v. Olson*, 487 U.S. 654 (1988) and asserts that the four mechanisms that limited the independent counsel's power in that case must be present in the FCA to save it from violating the Constitution. (Doc. 233 at 31.) In *Morrison*, the Supreme Court considered an Appointments Clause and Take Care Clause challenge to the Ethics and Government Act. The Act allowed the appointment of independent counsel to federally prosecute high-ranking government officials. *Morrison*, 487 U.S. at 660. The Court affirmed the law's constitutionality because, taken as a whole, the Act gave "the Executive Branch

sufficient control over the independent counsel to ensure that the President is able to perform his constitutionally assigned duties." *Id.* at 696.

To the extent that *Morrison* applies here, it does not compel a finding that FCA *qui tam* actions are unconstitutional. As the Fifth Circuit explained, a key distinction separates the FCA from the Ethics and Government Act. *See Riley*, 252 F.3d at 755. The independent counsel in *Morrison* possessed the "investigative and prosecutorial functions and powers of the Department of Justice, the Attorney General, and any other officer or employee of the Department of Justice." 28 U.S.C. § 594(a), *expired by* 28 U.S.C. § 599. Under that authority, the independent counsel could carry out criminal prosecutions. "No function cuts more to the heart of the Executive's constitutional duty to take care that the laws are faithfully executed than criminal prosecution." *Riley*, 252 F.3d at 755. By contrast, relators are civil litigants. *Id.* Although they bring actions in the U.S. Government's name, they wield only the limited powers of a civil litigant. They do not possess the criminal investigatory or prosecutorial powers of the independent counsel in *Morrison*.

Even if *Morrison* applies here, the FCA, "taken as a whole," allows the executive branch to maintain "sufficient control" of relators. *Morrison*, 487 U.S. at 693. As explained, the Government may intervene and take over the case. 31 U.S.C. § 3730(c)(1). If it does, it completely controls the action. *See id.* It can also move to

dismiss the entire action. *Id.* § 3730(c)(2)(A). If the Government initially declines to intervene, it retains the ability to do so later. *Id.* § 3730(c)(3). Meanwhile, relators proceed under a degree of oversight that a normal civil litigant does not: the Government can request copies of all pleadings and deposition transcripts; it can move to limit discovery; and it can settle the action on its own. *Id.* § 3730(c)(2)(B); *id.* § 3730(c)(3), (4). Indeed, the Eleventh Circuit has noted the "substantial control that the United States possesses over non-intervened FCA *qui tam* actions." *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1311 (11th Cir. 2021). Subject to such "substantial control," a relator's power falls well short of the "quite broad" powers of the independent counsel in *Morrison*. *Id.*; *Kelly*, 9 F.3d at 752. Accordingly, the FCA is consistent with *Morrison*. *See Riley*, 252 F.3d at 756; *Kelly*, 9 F.3d at 752–55.

  Defendant next argues that the Government's power to maintain control is relevant only if it exercises that power. (Doc. 256 at 16.) This Court disagrees. In *Morrison*—which Defendant asserts is controlling—the Supreme Court analyzed the power that the Executive Branch retained to control the independent counsel. *See Morrison*, 487 U.S. at 686. For example, the Attorney General "retain[ed] the power" to remove the independent counsel for good cause. *Id.* at 696. The Supreme Court made clear that retaining such power "provide[d] the Executive with

substantial ability to ensure that the laws [were] 'faithfully executed'" by the independent counsel. *Id.* Thus, the Government's retained powers in FCA actions, even if unexercised, are certainly relevant to the constitutional question. *See id.*

Due to the limits placed upon relators in *qui tam* actions, the Executive "retains 'sufficient control' over the relator's conduct to 'ensure that the President is able to perform his constitutionally assigned dut[y].'" *Taxpayers Against Fraud*, 41 F.3d at 1041 (quoting *Morrison*, 487 U.S. at 696). Accordingly, the *qui tam* provisions of the FCA do not violate the Take Care Clause. *See id.*; *Kelly* 9 F.3d at 752.

**iii. History confirms the constitutionality of the FCA's *qui tam* provisions.**

Historical evidence illuminates how the Constitution's drafters intended for it to interact with *qui tam* statutes. *See Marsh v. Chambers*, 463 U.S. 783, 790 (1983) (citing *Wisconsin v. Pelican Ins.*, 127 U.S. 265, 297 (1888)). Together with the reasons stated above, this historical evidence confirms the FCA's constitutionality.

The Supreme Court has previously relied upon the history of *qui tam* suits to confirm that *qui tam* litigants have Article III standing. *See Stevens*, 529 U.S. at 774 (finding the historical analysis "particularly relevant to the constitutional standing inquiry"). Justice Scalia concluded that the history of *qui tam* actions was "well nigh conclusive" to the Article III issue. *Id.* at 777. Although a different issue is before

this Court, "it is logically inescapable" that history is, at minimum, relevant to the Article II issues presented here. *See Riley*, 252 F.3d at 752.

*Qui tam* lawsuits date back to long before the birth of our country. *Stevens*, 529 U.S. at 774–77. Recognizing the value of such actions to the public, our own First Congress enacted multiple *qui tam* statutes. *Id.* at 776–77 nn.5–7, 793–96. Although the popularity of such statutes has ebbed and flowed, their presence has remained consistent. *Id.* at 774–77. Historically, *qui tam* provisions allowed a private citizen to bring actions for injuries against the Government. *Id.* at 774. The FCA continues this trend by allowing relators to bring suits for themselves and "for the United States Government." 31 U.S.C. § 3730(b)(1).

This Court recognizes that, by itself, "enactment by the First Congress [is not] a guarantee of a statute's constitutionality." *Polansky*, 599 U.S. at 450 (Thomas, J., dissenting) (citing *Marbury v. Madison*, 5 U.S. 137 (1803)). In this case, however, "[historical] evidence, together with the evidence that private prosecutions were commonplace in the 19th century, . . . is . . . sufficient to resolve the Article II question [before] the Court . . . ." *Stevens*, 529 U.S. at 801 (Stevens, J., dissenting) (citation omitted).

**d. Relators have standing.**

Finally, Defendant argues that relators lack Article III standing because the FCA violates Article II. (Doc. 234 at 27.) Because Defendant's Article II arguments lack merit, this argument fails as well. Moreover, the Supreme Court has held that there is "no room for doubt that a *qui tam* relator under the FCA has Article III standing." *Stevens*, 529 U.S. at 778. Thus, Relators have Article III standing. *Id.*

## IV. Conclusion

For the reasons discussed above, Defendant Exactech's Motion to Dismiss and for Judgment on the Pleadings (doc. 233) is hereby **DENIED**.

**DONE** and **ORDERED** on November 20, 2023.

L. Scott Coogler
United States District Judge

215647